## COMMONWEALTH *versus* TARRANT P. MERRIAM

Where upon the trial of an indictment for adultery, one act of adultery committed by the defendant with the woman named in the indictment, was proved by the testimony of a witness whose credibility the defendant attempted to impeach, it was *held* that other instances of improper familiarity between the defendant and the same woman not long before the act of adultery proved as above mentioned, might be given in evidence to corroborate the testimony of the witness.

INDICTMENT for adultery committed by the defendant with Cynthia Blood, in January 1830.

At the trial in the Common Pleas, before *Strong* J., the marriage of the defendant with Betsy Merriam, who was living, was first proved. Jonathan Snow, a witness on the part of the commonwealth, then testified, that in February 1830, between nine and ten o'clock in the evening, he was passing the defendant's house, and seeing a light, he stepped up to the window and looked in ; that he saw the defendant in bed ; that Cynthia Blood came in, undressed herself and got into the same bed ; and that soon after the defendant blew out the light.

Snow and two other witnesses testified respectively to three instances of improper familiarity between the defendant and Cynthia Blood, one of which was about a fortnight and the others within a year before the adultery proved as above mentioned.

Many witnesses were called to impeach Snow's genera. character for veracity, and many to support it in that particular

The evidence of improper familiarities was objected to, as not tending to prove the act of adultery to have been committed on the night when Snow testified that he saw Cynthia Blood get into the bed where the defendant lay. But the judge permitted the evidence to go to the jury, upon the ground that instances of improper intimacy or familiarity between Cynthia Blood and the defendant, happening a short time previously to the time when the crime was charged to have been committed, were competent evidence. To this opinion the defendant filed exceptions.

The jury found a verdict for the commonwealth.

*Oct.* 18*th.*     *H. H. Fuller,* in support of the exceptions. The rule, both

.n civil and in criminal cases, is, that the evidence must be
confined to the fact in issue. The testimony of Snow, that
he saw Cynthia Blood get into bed with the defendant, was
complete proof of the charge in the indictment; and the evi-
dence of other instances of improper conduct had no tendency
to prove that particular act of adultery, and probably was in-
troduced merely for the purpose of sustaining Snow's credibili-
ty. The government could not put in issue the defendant's
general character; much less could they prove that on par
ticular occasions he acted indecently. There are some excep-
tions to the general rule, as where collateral facts are required
to prove the *quo animo* or the *scienter*, but here the testimony
of Snow left no doubt as to the intention of the defendant.
1 Phillipps on Evid. (6th edit.) 158, 168, cites *Rex* v. *Cole*;
1 Chit. Cr. Law, 564; 1 Stark. Evid. 23, 30, 31, 32, 39;
2 Stark. Evid. 366, 367, 382; 9 Petersdorff, 147, 148, 149,
note; 2 Russell on Crimes, 1513, 1514, 1515; *Finnerty* v.
*Tipper*, 2 Campb. 72; *Stuart* v. *Lovell*, 2 Stark. R. 93.

*Austin*, attorney-general, for the commonwealth. The par-
ticular day on which the adultery is alleged in the indictment
to have been committed, is immaterial; and if it were proved
that a married man and an unmarried woman lived together as
man and wife, although there were no ocular evidence of any
particular act of adultery, the proof would be sufficient to sus-
tain an indictment for the offence. The only objection would
be, that it showed the offence to have been committed several
times instead of once; but that will not prevent a conviction
for one offence. Under the circumstances proved in the
present case, it was competent to the jury to infer, that Cyn-
thia Blood was the defendant's paramour. The fact that a
person has committed larceny or perjury at one time, does not
prove that he has done so at another; but intimacy between
the sexes is of a different nature.

*Fuller*, in reply, to show that although the time alleged
was not material, yet that the government could prove but one
offence, cited 1 Chit. Cr. Law, 557; East's P. C. 519.

PUTNAM J. delivered the opinion of the Court. Evidence
should be excluded which tends only to the proof of collateral
facts. It should be admitted if it has a natural tendency to

Common-
wealth
*v.*
Merriam.

*April term
1834.*

establish the fact in controversy. If the evidence is irrelevant, it should be rejected for two reasons; 1. It would have a tendency to mislead the jury from the true subject of the inquiry; and 2. No man is to be expected to go to trial prepared to prove things which are unconnected with the issue.

The issue upon this indictment was, whether or not the defendant had committed adultery with Cynthia Blood. The government offer the testimony of Jonathan Snow, to prove that this offence was committed with her in February 1830. The particular day set forth in the indictment was immaterial; the offence might have been proved on that, or on any other day prior to the caption of the indictment.

The evidence, from the nature of the offence, must generally be circumstantial. If the facts stated by Snow, are true, there could be no reasonable doubt of the guilt of the defendant.

But Snow's general character for truth was impeached by the defendant, and it was supported by the government. And the court admitted evidence of other instances of improper intimacy between Cynthia Blood and the defendant, happening a short time before February 1830, as having a tendency to corroborate the testimony of Snow, in regard to the intercourse which he testified had taken place between those persons. To the admission of such evidence the defendant objected, and the question is whether it was competent.

It was argued that the defendant was not to be put upon his trial for every act of his life, but for a particular offence. Be it so; if the evidence which was received, has a natural tendency to corroborate other direct evidence in the case, it would seem to be clearly admissible.

In 9 Petersdorff, 149, note, there are some cases which illustrate this subject. Thus, in prosecutions for uttering counterfeit money, evidence that the defendant had previously uttered other counterfeits, or that he had others in his possession, is admissible. Evidence of this kind has uniformly been received as tending to show the *scienter*. So where several were indicted for a conspiracy to carry on the business of common cheats, it may be proved that *similar* false represen

tations had been made by the prisoner to others who were in business, but who were not named on the record.

So upon an issue out of chancery to try a question of illegitimacy, after probable evidence of non-access, evidence may be given that the mother was of bad character. The husband and wife had lived apart, she in London, he in Staffordshire, and the plaintiff was born three years after the separation. Chief Justice *Raymond* allowed evidence that the mother was of bad fame, to rebut the presumption of legitimacy, and the jury found the plaintiff to be illegitimate. *Pendrell* v. *Pendrell*, 2 Str. 925.

In the case at bar, after hearing all the evidence concerning the general character of the witness Snow, we think the government might properly introduce the evidence which was objected to. The circumstances thus proved were such as naturally excite in the mind a belief that a woman who would so conduct herself, would be more likely to commit the fact alleged against her, than if her deportment had been modest and discreet.

We all think that the objections made by the counsel for the defendant cannot prevail, and that the defendant must receive sentence in pursuance of the verdict.